IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

BOGART MUMFORD PARKS,
individually and as the
personal representative of the
ESTATE OF WILLIAM J. PARKS,
deceased; and CHIYA NICHOLE
PARKS,

     Plaintiffs,

     vs.

ROBERT R. WATKINS, M.D.;
HAMAKUA HEALTH CENTER, INC.
d/b/a KOHALA FAMILY HEALTH
CENTER; and UNITED STATES OF
AMERICA,

     Defendants.

Civ. No. 11-00594 HG-RLP

**ORDER GRANTING DEFENDANTS UNITED STATES OF AMERICA AND HAMAKUA HEALTH CENTER, INC., D/B/A KOHALA FAMILY HEALTH CENTER'S MOTION TO DISMISS AMENDED COMPLAINT (DOC. 32)**
**AND**
**DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT (DOC. 44)**
**AND**
**DENYING DEFENDANT ROBERT R. WATKINS, M.D.'S**
**MOTION FOR PARTIAL SUMMARY JUDGMENT ON PLAINTIFFS' CLAIM FOR PUNITIVE DAMAGES (DOC. 72)**

This matter arises out of a medical malpractice dispute.

Plaintiffs Bogart Mumford Parks and Chiya Nichole Parks,

representing the Estate of William J. Parks, have filed a suit

1

for medical negligence against Defendants Robert R. Watkins, M.D., Hamakua Health Center d/b/a Kohala Family Health Center, and the United States of America. The Plaintiffs allege that Defendant Watkins, a licenced physician, committed medical negligence when he failed to treat and diagnose William Parks's cancer, and that this negligence caused his untimely death.

There are three motions before the Court:

(1) Defendants Hamakua Health Center and the United States of America have moved to be dismissed from case for lack of subject matter jurisdiction;

(2) Plaintiffs have moved for summary judgment against Defendant Watkins on the issue of negligence; and

(3) Defendant Watkins has moved for summary judgment on the issue of punitive damages.

The evidence in the record indicates that the Court lacks subject matter jurisdiction over the Federal Defendants because there is no indication that any medical negligence occurred during the period in which Defendant Watkins was "an employee" of the Government. DEFENDANTS UNITED STATES OF AMERICA AND HAMAKUA HEALTH CETNER, INC. d/b/a KOHALA FAMILY HEALTH CENTER'S MOTION TO DISMISS AMENDED COMPLAINT (Doc. 32), filed on April 9, 2012 is **GRANTED.** All allegations against Defendants Hamakua Health Center and the United States of America are **DISMISSED WITHOUT PREJUDICE.** The only remaining defendant in the matter is

Defendant Watkins.

There are material issues of disputed fact about whether Defendant Watkins breached the standard of care in his treatment of William Parks.  Summary judgment on whether Defendant Watkins committed medical negligence is not appropriate.  The PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT (Doc. 44), filed on May 31, 2012 is **DENIED**.

There are material issues of disputed fact concerning the motives and reasons for Defendant Watkins's conduct.  Summary judgement on the issue of punitive damages would  not be appropriate.  DEFENDANT ROBERT R. WATKINS, M.D.'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON PLAINTIFFS' CLAIM FOR PUNITIVE DAMAGES (Doc. 72), filed on August 6, 2012, is **DENIED.**

## PROCEDURAL HISTORY

On September 29, 2011, the Plaintiffs filed a Complaint. (Doc. 1.)

On March 21, 2012, the Plaintiffs were given leave to file a First Amended Complaint.  (Order Granting Plaintiffs' Motion for Leave to File First Amended Complaint, filed March 21, 2012 (Doc. 27).)

On March 28, 2012, the Plaintiffs filed a First Amended Complaint.  (Doc. 30.)

On April 9, 2012, Defendants Hamakua Health Center, Inc. and

the United States of America filed "DEFENDANTS UNITED STATES OF AMERICA AND HAMAKUA HEALTH CENTER, INC., d/b/a KOHALA FAMILY HEALTH CENTER'S MOTION TO DISMISS AMENDED COMPLAINT" (Doc. 32).

On April 12, 2012, the parties requested a continuance on the Motion to Dismiss in order to conduct discovery relevant to the motion.  (Letter, dated April 12, 2012 (Doc. 36).)

On April 13, 2012, the request for a continuance was granted and hearing for the Motion to Dismiss was set for August 21, 2012.  (Minute Order, filed April 13, 2012 (Doc. 37).)

On May 31, 2012, the Plaintiffs filed "PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT" (Doc. 44) and an accompanying "SEPARATE CONCISE STATEMENT IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT" (Doc. 45).  A hearing on the Plaintiffs' Motion for Partial Summary Judgment was set for August 21, 2012, the same date of the hearing on the Motion to Dismiss.  (Minute Order, June 6, 2012 (Doc. 46).)

On July 17, 2012, the Plaintiffs' filed "PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS UNITED STATES OF AMERICA AND HAMAKUA HEALTH CENTER, INC., d/b/a KOHALA FAMILY HEALTH CENTER'S MOTION TO DISMISS AMENDED COMPLAINT, FILED ON APRIL 9, 2012" (Doc. 61).

On the same day, Defendant Watkins filed "DEFENDANT ROBERT R. WATKINS, M.D.'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT FILED ON MAY 31, 2012" (Doc. 62) and

an accompanying "CONCISE STATEMENT OF FACTS IN OPPOSITION" (Doc. 63).

On July 30, 2012, the Defendants Hamakua Health Center, Inc. and the United States of America filed "HAMAKUA HEALTH CENTER, INC., d/b/a KOHALA FAMILY HEALTH CENTER AND UNITED STATES OF AMERICA'S REPLY MEMORANDUM TO PLAINTIFFS' OPPOSITION TO THE MOTION TO DISMISS" (Doc. 66).

On the same day, Plaintiffs filed "REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT, FILED MAY 31, 2012" (Doc. 67).

On August 6, 2012, Defendant Watkins filed "DEFENDANT ROBERT R. WATKINS, M.D.'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON PLAINTIFFS' CLAIM FOR PUNITIVE DAMAGES" (Doc. 72), and an accompanying "SEPARATE AND CONCISE STATEMENT OF FACTS IN SUPPORT OF HIS MOTION FOR PARTIAL SUMMARY JUDGMENT ON PLAINTIFFS' CLAIM FOR PUNITIVE DAMAGES" (Doc. 73).

On August 21, 2012, Defendants Hamakua Health Center, Inc. and the United States of America's Motion to Dismiss and the Plaintiffs' Partial Motion for Summary Judgment came on for hearing.  The Court heard argument and took the motions under submission.

## BACKGROUND

This controversy stems from the death of William J. Parks

("Decedent"), a resident of Kohala on the Island of Hawaii.
Plaintiffs Bogart Mumford Parks ("B. Parks") and Chiya Nichole
Parks ("N. Parks"), representing the Estate of the Decedent, have
filed a medical malpractice suit against Defendants Robert R.
Watkins, M.D., Hamakua Health Center d/b/a Kohala Family Health
Center ("Hamakua Health Center"), and the United States of
America. The Plaintiffs allege that Defendant Watkins, a
licenced physician, committed medical negligence when he failed
to treat and diagnose the Decedent's cancer, and that this
negligence caused the Decedent's untimely death.

**The Defendants**

Defendant Watkins has been a licenced physician practicing
in the Kohala community for over thirty years. (Complaint at ¶ 16
(Doc. 1).) For approximately twenty-four years, Defendant
Watkins operated a private practice in downtown Hawi, which
focused on providing primary healthcare. (See Deposition of
Robert Watkins at 22-23 ("Watkins's Deposition"), attached as
Exhibit 14 to the Plaintiffs' Opposition to the Motion to Dismiss
(Doc. 61).) On June 30, 2006, however, Defendant Watkins closed
his practice. (Id. at 91-92.) Around the same time, another
Kohala physician, Dr. Patrick Siu, also decided to close his
practice. (See Deposition of Susan Hunt at 103, attached as
Exhibit G to the Federal Defendants' Reply to the Plaintiffs'
Opposition to the Motion to Dismiss (Doc. 66-7).) Due to the

closures, many of Defendant Watkins's and Dr. Siu's former patients began receiving medical care from the Kohala Family Medical Center, a medical facility located in Kohala that was owned and operated by Syliva Sonneschein, Professional Corporation ("Sonnenschein Corp.").

Due to the influx of new patients to the Kohala Family Medical Center, Sonnenschein Corp. negotiated with Defendant Watkins to provide stopgap medical services. (See Independent Contractor Agreement, attached as Exhibit 1 to Plaintiff's Opposition to the Motion to Dismiss (Doc. 61-3).) The Independent Contractor Agreement between Defendant Watkins and Sonnenschein Corp., which went into effect on August 1, 2006, required Defendant Watkins to provide medical services to patients at the Kohala Family Health Center for twelve hours a week for fourteen weeks. (Id. at 1.) The Independent Contractor Agreement stated that Defendant Watkins would receive $125 per hour of work, and that all the fees charged for his services would be retained by Sonnenschein Corp. (Id. at 2.) The Independent Contractor Agreement ended on November 2, 2006. (Id. at 1.) Defendant Watkins did not treat any patients at the Kohala Family Health Center after the expiration of the Independent Contractor Agreement. (Watkins's Deposition at 25.)

In as early as 2004, leaders in the Kohala community grew concerned about having sufficient access to primary healthcare

services in anticipation of the closures of Defendant Watkin's and Dr. Siu's practice. (Request for Addition of a Site at 1-3, attached as Exhibit 4 to Plaintiffs' Opposition to the Motion to Dismiss (Doc. 61).) A request was made to Defendant Hamakua Health Center, a federally funded organization that already operated a medical facility in neighboring Honokaa, to open a primary healthcare facility in Kohala. (<u>Id.</u>) Defendant Hamakua Health Center agreed to consider opening a facility. (<u>Id.</u>) A task force was created from a cross section of the North Kohala community to survey the health needs of residents. (<u>Id.</u>) On January 4, 2005, the task force recommended and made a formal request to Defendant Hamakua Health Center to purchase and operate the Kohala Family Health Medical Center. (<u>Id.</u>)

On January 1, 2006, upon receiving federal funds from the U.S. Department of Health and Human Services ("DHHS"), Defendant Hamakua Health Center was deemed "an employee" of the Public Health Service for the purposes of liability under the Federal Tort Claims Act. (Declaration of Meredith Torres at ¶2, attached to Federal Defendants' Motion to Dismiss (Doc. 32).) Subsequently, Defendant Hamakua Health Center began the process of taking over the Kohala Family Health Center. On August 1, 2006, Defendant Hamakua Health Center began aiding Sonnenschein Corp. with the merging of Defendant Watkin's patients with the Kohala Family Health Center. (Request for Addition of a Site at

2, Exhibit 4 of Plaintiff's Opposition (Doc. 61).) In addition,
Defendant Hamakua Health Center began making renovations of the
facility in anticipation of acquiring new healthcare
professionals. (Id.)

On November 1, 2006, Sonnenschein Corp. and Defendant
Hamakua Health Center entered into an Asset Purchase Agreement,
wherein Sonnenschein Corp. agreed to transfer all the assets
associated with the Kohala Family Health Center to Defendant
Hamakua Health Center, Inc. (See Asset Purchase Agreement,
attached as Exhibit A to Defendants' Motion to Dismiss (Doc. 32-
6).) The Asset Purchase Agreement provided for a transfer date
of November 15, 2006 at 1:00 p.m. (Id. at 2.)

Prior to the transfer of the Kohala Family Medical Center
from Sonnenschein Corp. to Defendant Hamakua Health Center, Inc.,
the DHHS extended liability coverage to the Kohala Family Health
Center on August 10, 2006. (Declaration of Meredith Torres at
¶2, attached to Federal Defendants' Motion to  Dismiss (Doc.
32).) According to the Declaration of Meredith Torres, an
Attorney-Advisor of the DHHS, liability coverage extended to the
Kohala Family Health Center on August 10, 2006 because that was
the date Defendant Hamakua Health Center effectively assumed
operation of the facility. (Id.)

Between August 10, 2006 and November 2, 2006, Defendant
Watkins treated patients at the Kohala Family Medical Center

while the facility was effectively under the control of Defendant Hamakua Health Center.  In a letter dated August 22, 2006, Defendant Hamakua Health Center agreed to take custody of all of Defendant Watkins's medical records.  (<u>See</u> Letter to Dr. Watkins, Dated August 22, 2006, attached as Exhibit 5 to Plaintiffs' Opposition to the Motion to Dismiss (Doc. 61-7).)  Defendant Hamakua Health Center agreed to store the records at the Kohala Family Health Center.  (<u>Id.</u>)  The letter stated that Defendant Hamakua Health Center would assume responsibility for the records effective August 1, 2006, the same effective date of his Independent Contractor Agreement.  (<u>Id.</u>)

**<u>The Decedent and Defendant Watkins</u>**

Defendant Watkins began his friendship with the Decedent in 1978.  (<u>See</u> Complaint at ¶ 16; Watkins' Deposition at 72.)  By the time the Decedent passed away in 2009, Defendant Watkins considered the Decedent his best friend.  (<u>Id.</u>) During the length of their friendship, Defendant Watkins was the Decedent's primary healthcare physician.  (Complaint at ¶ 17; Watkins' Deposition at 72-73.)  Defendant Watkins provided his medical services to the Decedent free of charge.  (<u>Id.</u>)  In exchange, the Decedent, a master carpenter, would provide carpentry services.  (<u>Id.</u>)

On June 24, 2007, the Decedent suffered a pulmonary

embosis.[1]  (See Plaintiffs' Separate and Concise Statement in
Support of their Motion for Summary Judgment at ¶ 2 (Doc. 45).)
He was treated at the Kohala Community Hospital.  (Id.)
According to the Plaintiffs, imaging of the Decedent's chest at
that time did not reveal any pre-existing cancer or suspicious
lesions.  (Id.)  The Decedent apparently made a complete
recovery.  (Id.)

In July or August of 2007, approximately a month after the
Decedent's pulmonary embosis, the Decedent noticed an itchy
lesion on his left upper back.  (Complaint at ¶ 20.)  The
Decedent asked Defendant Watkins to inspect the lesion and, if
necessary, treat it.  (Id.)  Defendant Watkins visited the
Decedent at his workshop and examined the lesion.  According to
Defendant Watkins, the lesion was symmetric, round, with distinct
borders.  (Defendant Watkins's Deposition at 50.)  According to
Defendant Watkins, he discussed the lesion with the Decedent and
advised that excision of the lesion was the proper course of
treatment.  (Complaint at ¶ 20.)

Defendant Wakins went to the Decedent's residence at a later
date and performed the excision of the lesion.  (Complaint at ¶
20.)  Afer removal, Defendant Watkins claims that he did not
believe the lesion was suspicious and he decided not test the

---

[1]A pulmonary emboli or embolism is a blockage of the main
artery of the lung or one of its branches by a substance that
traveled from elsewhere in the body.

11

tissue for cancer. (Defendant Watkins's Concise Statement of
Facts at ¶ 2.) According to the Complaint, Defendant Watkins did
not create any medical records of the procedure. (Complaint at
¶¶ 20, 24.)

The Plaintiffs allege that the removed lesion was actually a
symptom of metastatic melanoma. (Id. at ¶ 20.) Plaintiffs
assert that if Defendant Watkins had ordered a biopsy on the
removed tissue, it would have revealed that the Decedent was
suffering from treatable cancer. (Id.)

The Complaint states that because of Defendant Watkins
alleged failure to diagnose the melanoma, the Decedent's cancer
went untreated from 2007 until 2009. (Id. at ¶ 27.) On May 5,
2009, Defendant Watkins allegedly met with the Decedent about a
painful swelling in his underarms. (Id. at ¶ 28.) According to
the Complaint, Defendant Watkins believed that the swelling was
caused by a bacterial infection and prescribed an antibiotic and
pain medication. (Id.) Later that month, Defendant Watkins
allegedly ordered a CT scan after observing that the swelling in
the Decedent's underarm had not responded to the medication.
(Id. at ¶ 29.) The CT scan allegedly revealed numerous lesions
on the Decedent's liver and extensive lymphadenopathy in his
underarms, indicating signs of metastatic cancer. (Id. at ¶ 30.)
On June 1, 2009, Defendant Watkins informed the Decedent and his
wife that the Decedent was suffering from terminal cancer. (Id.

at ¶ 31.) On July 22, 2009, the Decedent passed away. (<u>Id.</u> at ¶ 53.)

According to the Complaint, Defendant Watkins allegedly told the Plaintiffs that he had suspicions that the removed lesion was cancerous but decided not to test it. (<u>Id.</u> at ¶¶ 44-46.) The Complaint states that Defendant Watkins told the Plaintiffs that he decided not to test the lesion because it would be too expensive. (<u>Id.</u> at ¶ 48.) Defendant Watkins disputes this account. Defendant Watkins has testified that the Decedent was concerned with how expensive his visit to the emergency room for his pulmonary embosis had been, and that the Decedent decided that testing the lesion was not worth the expense. (Watkins's Deposition at 51-52.)

The Plaintiffs bring this suit against the Defendants alleging that Defendant Watkins committed medical negligence. The Plaintiffs claim that if Defendant Watkins had sufficiently performed his duty as a physician, the Decedent's cancer would have been discovered and treated. The Plaintiffs bring this action against Defendants Hamakua Health Center and the United States of America pursuant to a theory of *respondeat superior*. The Plaintiffs claim that Defendant Watkins was a physician for Defendant Hamakua Health Center at one point, and that pursuant to federal law, Defendant Watkins was "an employee" of the United States' Department of Health and Human Services.

**The Motions**

There are currently three motions before the Court. Defendants Hamakua Health Center d/b/a Kohala Family Medical Center and the United States of America (collectively "Federal Defendants") have moved to be dismissed from the case for a lack of subject matter jurisdiction.

The Plaintiffs have moved for summary judgment against Defendant Watkins.  The Plaintiffs argue that the undisputed facts in the record prove, as a matter of law, that Defendant Watkins committed medical negligence.

Defendant Watkins moves for summary judgment on the issue of punitive damages.  Defendant Watkins argues that the undisputed evidence in the record establishes, as a matter of law, that the Plaintiffs cannot recover punitive damages.


STANDARD OF REVIEW

**I.    MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION**

The district courts of the United States are courts of limited jurisdiction.  <u>Exxon Mobil Corp. v. Allapattah Servs.</u>, 545 U.S. 546, 552 (2005).  Federal district courts have no jurisdiction without specific constitutional or statutory authorization.  <u>Id.</u>  Pursuant to Federal Rule of Civil Procedure 12(b)(1), a case must be dismissed for lack of subject matter jurisdiction when the Court lacks a constitutional or statutory

14

basis to adjudicate the controversy.  Fed. R. Civ. P. 12(b)(1);

Leeson v. Transamerica Disability Income Plan, 671 F.3d 969, 975

(9th Cir. 2012).

A challenge to the Court's subject matter jurisdiction may

be "facial or factual."  Safe Air for Everyone v. Meyer, 373 F.3d

1035, 1039 (9th Cir. 2004).  In a facial attack, the party

challenging jurisdiction argues that the allegations contained in

a complaint are insufficient "on their face" to invoke federal

jurisdiction.  Id.  A facial challenge, therefore, mirrors a

traditional motion to dismiss analysis.  The Court must take all

allegations contained in the pleading "to be true and draw all

reasonable inferences in [its] favor."  Wolfe v. Strankman, 392

F.3d 358, 362 (9th Cir. 2004).

In a factual attack, the party challenging jurisdiction

argues that the facts in the case, notwithstanding the

allegations in the Complaint, divest the Court of subject matter

jurisdiction.  See White v. Lee, 227 F.3d 1214, 1242 (9th Cir.

2000).  Accordingly, no presumptive truthfulness attaches to the

Complaint's allegations.  Id.  The party challenging jurisdiction

presents "affidavits or other evidence properly brought before

the court" indicating that subject matter jurisdiction is

lacking.  Savage v. Glendale Union High Sch., 343 F.3d 1036, 1039

n.2 (9th Cir. 2003).  The burden then shifts to "the party

opposing the motion [to] furnish affidavits or other evidence to

satisfy its burden of establishing subject matter jurisdiction."
Id.; Colwell v. Dep't of Health and Human Serv., 558 F.3d 1112,
1121 (9th Cir. 2009).  Failure to present suitable evidence
establishing subject matter jurisdiction necessitates dismissal.
Moore v. Maricopa Cnty. Sheriff's Office, 657 F.3d 890, 895 (9th
Cir. 2011).

## II.  MOTIONS FOR SUMMARY JUDGMENT

Summary judgment is appropriate when there is no genuine
issue as to any material fact and the moving party is entitled to
judgment as a matter of law.  Fed. R. Civ. P. 56(a).  To deny
summary judgment, there must be sufficient evidence that a
reasonable jury could return a verdict for the nonmoving party.
Nidds v. Schindler Elevator Corp., 113 F.3d 912, 916 (9th Cir.
1996).

The moving party has the initial burden of identifying for
the court the portions of the materials on file that it believes
demonstrate the absence of any genuine issue of material fact.
T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809
F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp. v. Catrett,
477 U.S. 317, 323 (1986)).  The moving party, however, has no
burden to negate or disprove matters on which the opponent will
have the burden of proof at trial.  The moving party need not
produce any evidence at all on matters for which it does not have
the burden of proof.  Celotex, 477 U.S. at 325.  The moving party

must show that there is no genuine issue of material fact and that he or she is entitled to judgment as a matter of law. That burden is met simply by pointing out to the district court that there is an absence of evidence to support the nonmovant's case. Id.

If the moving party meets its burden, then the opposing party may not defeat a motion for summary judgment in the absence of probative evidence tending to support its legal theory. Commodity Futures Trading Comm'n v. Savage, 611 F.2d 270, 282 (9th Cir. 1979). The opposing party must present admissible evidence showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); Brinson v. Linda Rose Joint Venture, 53 F.3d 1044, 1049 (9th Cir. 1995). If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. Nidds, 113 F.3d at 916 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986)).

The court views the facts in the light most favorable to the non-moving party. State Farm Fire & Casualty Co. v. Martin, 872 F.2d 319, 320 (9th Cir. 1989).

Opposition evidence may consist of declarations, admissions, evidence obtained through discovery, and matters judicially noticed. Fed. R. Civ. P. 56(c); Celotex, 477 U.S. at 324. The opposing party cannot, however, stand on its pleadings or simply assert that it will be able to discredit the movant's evidence at

trial.  Fed. R. Civ. P. 56(e); <u>T.W. Elec. Serv.</u>, 809 F.2d at 630.

The opposing party cannot rest on mere allegations or denials.

Fed. R. Civ. P. 56(e); <u>Gasaway v. Northwestern Mut. Life Ins.</u>
<u>Co.</u>, 26 F.3d 957, 959-60 (9th Cir. 1994).  Nor can the opposing

party rest on conclusory statements.  <u>Nat'l Steel Corp. v. Golden</u>
<u>Eagle Ins. Co.</u>, 121 F.3d 496, 502 (9th Cir. 1997).


## ANALYSIS

**I.**  **DEFENDANTS HAMAKUA HEATH CENTER AND THE UNITED STATES OF AMERICA'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION**

The United States, as a sovereign state, is immune from suit

unless it specifically consents.  <u>United States v. Mitchell</u>, 445

U.S. 535, 538 (1980); <u>Reed v. U.S. Dep't of Interior</u>, 231 F.3d

501, 504 (9th Cir. 2000).  Any waiver of sovereign immunity must

be unequivocally expressed.  <u>Block v. North Dakota</u>, 461 U.S.

273, 287 (1983).  Accordingly, when a statute waives sovereign

immunity, the Court must strictly construe the statute in favor

of the United States.  <u>Brady v. United States</u>, 211 F.3d 499 (9th

Cir. 2000) (citations and internal quotation marks omitted).  If

there has not been an express waiver of sovereign immunity, then

the Court lacks subject matter jurisdiction over the case and it

must be dismissed pursuant to Federal Rule of Civil Procedure

12(b)(1).  <u>Orff v. United States</u>, 358 F.3d 1137, 1142 (9th Cir.

2004)

The Federal Tort Claims Act ("FTCA") provides for a broad waiver of the United States' sovereign immunity. Schoenfeld v. Quamme, 492 F.3d 1016, 1019 (9th Cir. 2007). The FTCA manifests the United States' consent to be sued "in the same manner and to the same extent as a private individual under like circumstances[.]" 28 U.S.C. § 2674. The FTCA waives sovereign immunity for the negligence of "any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b)(1).

The Federally Supported Health Centers Assistance Act of 1992 ("FSHCAA"), Pub. L. No. 102-501, 106 Stat. 3268 (1992), extends FTCA coverage to certain federally-funded healthcare centers. According to the FSHCAA, those healthcare centers receiving federal funds to serve traditionally "underserved populations" as defined by 42 U.S.C. § 254b, are deemed "employees" of the "Public Health Service" for the purposes of FTCA liability. 42 U.S.C. § 233(g). Any "damage for personal injury, including death, resulting from the performance of medical, surgical, dental, or related functions" by a covered healthcare center is subject to the sovereign immunity waiver of the FTCA. 42 U.S.C. §§ 233(a),(g). A plaintiff, therefore, can bring a medical malpractice suit against the United States for the negligence performed by a covered healthcare center or one of its physicians. See Id.; Boques v. United States, 703 F. Supp.

2d 318, 319 (S.D.N.Y. 2010).

Here, it is undisputed that starting on January 1, 2006, Defendant Hamakua Health Center was a covered healthcare center pursuant to the FSHCAA and was deemed "an employee" of the Public Health Service. The Plaintiffs allege that Defendant Watkins was employed by Defendant Hamakua Health Center during the time of the alleged medical malpractice. The Plaintiffs claim that under the doctrine of *respondeat superior* the liability of Defendant Watkins imputes to Defendant Hamakua Health Center and, pursuant to the FSHCAA and FTCA, the United States of America.

**(A)  The Standard for Summary Judgment Does Not Apply**

Defendants Hamakua Health Center and the United States of America (collectively, "Federal Defendants") move to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). The Federal Defendants' 12(b)(1) motion constitutes a factual attack on jurisdiction because the motion disputes the factual basis of jurisdiction. See Safe Air v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004). The Federal Defendants have put forward evidence to challenge the central issue, *i.e.*, whether Defendant Watkins was employed by Defendant Hamakua Health Center at the time of the medical negligence.

In resolving a factual attack, the Court reviews evidence beyond the allegations contained in the complaint to determine whether, as a factual matter, subject matter jurisdiction exists.

Savage v. Glendale Union High Sch., 343 F.3d 1036, 1039 n.2 (9th Cir. 2003) (citing White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000)).  The Court must "weigh the evidence" presented by the parties and make a determination on "whether it has jurisdiction."  Autery v. United States, 424 F.3d 944, 956 (9th Cir. 2005).

The Plaintiffs argue that the Court should employ a summary judgment standard in evaluating the jurisdictional evidence presented by the parties.  The Plaintiffs claim that disputed material facts concerning jurisdiction should be resolved in their favor, as the non-moving party.  See, e.g., State Farm Fire & Casualty Co. v. Martin, 872 F.2d 319, 320 (9th Cir. 1989) (materially disputed facts in summary judgment resolved in favor of non-moving party).

Generally, the review of evidence outside the Complaint does not convert a motion to dismiss for lack of subject matter jurisdiction into a motion for summary judgment.  Safe Air, 373 F.3d at 1039 ("[T]he district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment.").  The Court weighs the evidence presented by the parties and determines, on its own, whether jurisdiction exists.  Autery, 424 F.3d at 956.  When, however, "the jurisdictional issue and substantive claims are so intertwined that resolution of the jurisdictional question is

dependent on factual issues going to the merits[,]" the Court may use the summary judgment standard to avoid making substantive rulings on the merits of the case. Rosales v. United States, 824 F.2d 799, 803 (9th Cir. 1987). The Court only employs the summary judgment standard in evaluating a motion to dismiss for lack of subject matter jurisdiction when the resolution of the jurisdictional issue bears upon a substantive element of the plaintiff's case. Id.; Augustine v. United States, 704 F.2d 1074, 1077 (9th Cir. 1983); see Land v. Dollar, 330 U.S. 731, 735 (1947). The "question of jurisdiction and the merits of an action are intertwined where 'a statute provides the basis for both the subject matter jurisdiction of the federal court and the plaintiff's substantive claim for relief.'" Safe Air, 373 F.3d at 1039-40 (quoting Sun Valley Gasoline, Inc. v. Ernst Enter., 711 F.2d 138, 139 (9th Cir. 1983)). When the facts surrounding jurisdiction do not bear upon the substantive allegations of the plaintiff's complaint, however, the Court should resolve the jurisdictional dispute by weighing the evidence for itself. See Autery, 424 F.3d at 956.

Here, the merits of the Plaintiffs' Complaint are not "intertwined" with the issue of subject matter jurisdiction. The Plaintiffs' Complaint states a single cause of action for medical negligence. The substantive basis of the Plaintiffs' Complaint is grounded in Hawaii state negligence law. The statutory basis

of the Plaintiffs' alleged jurisdiction over the Federal Defendants, however, is the FTCA and the FSHCAA. There is no single statute providing "the basis for both the subject matter jurisdiction of the federal court and the plaintiff's substantive claim for relief." Sun Valley Gasoline, 711 F.2d at 139. Moreover, establishing whether Defendant Watkins was employed by the Federal Defendants to determine subject matter jurisdiction, does not bear upon whether Defendant Watkins committed medical malpractice. Determining whether Defendant Watkins committed medical practices focuses on whether Defendant Watkins breached the standard of care required of a medical professional in his area, and whether his alleged breach caused the Decedent's death. See Bernard v. Char, 903 P.2d 676, 682 (Haw. Ct. App. 1995). The issue surrounding Defendant Watkins's employment status in 2007, however, is a distinct inquiry that does not bear upon the merits of the Plaintiffs' medical negligence claim. See, e.g., CNA v. United States, 535 F.3d 132, 143-44 (3d Cir. 2008) (issue of Government employment is not intertwined with questions of negligence); Halker v. United States, 07-cv-1456-JMS-WGH, 2010 U.S. Dist. LEXIS 72339, at *12-13 (S.D. Ind. July 16, 2010) (issue of Government employment not intertwined with claim for medical malpractice).

There is no indication that the issue of jurisdiction in this case is so "intertwined" with the merits of the Plaintiffs'

claim that the Defendants' Motion to Dismiss for lack of subject matter jurisdiction should be converted into a motion for summary judgment. Accordingly, in evaluating the evidence submitted by the parties, the Court weighs the evidence as a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1).

**(B) The Federal Defendants Are Not Judicially Estopped**

"Judicial estoppel is an equitable doctrine that precludes a party from gaining an advantage by asserting one position, and then later seeking an advantage by taking a clearly inconsistent position." Hamilton v. State Farm Fire & Cas. Co., 270 F.3d 778, 782 (9th Cir. Cal. 2001) (citing Rissetto v. Plumbers & Steamers Local 343, 94 F.3d 597, 600-601 (9th Cir. 1996); Russell v. Rolfs, 893 F.2d 1033, 1037 (9th Cir. 1990)). The doctrine prevents a party from "playing fast and loose with the courts" by "gaining an advantage by taking inconsistent positions[.]" Hamilton, 270 F.3d at 782 (quoting Russell, 893 F.2d at 1037). The doctrine also ensures "the orderly administration of justice" and upholds a proper "regard for the dignity of judicial proceedings[.]" Id. Judicial estoppel my apply even when the inconsistent position was taken in an entirely different proceeding. Rissetto, 94 F.3d at 605.

The Court considers three factors in determining whether to apply the doctrine of judicial estoppel. New Hampshire v. Maine, 532 U.S. 742, 750 (2001). First, the Court will only employ

judicial estoppel when the party's pervious position was "clearly inconsistent" with the position it is currently asserting.  Id. (citations omitted); Hamilton, 270 F.3d at 782.  Second, the Court must consider whether acceptance of the inconsistent position would create the perception that either the first or the second court was misled.  New Hampshire, 532 U.S. at 750 (quoting Edwards v. Aetna Life Ins. Co., 690 F.2d 595, 598-599 (6th Cir. 1982)).  Third, the Court must determine "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped[.]"  New Hampshire, 532 U.S. at 750  (citations omitted).

    The Plaintiffs argue that the Federal Defendants are judicially estopped from taking the position that the Court lacks subject matter jurisdiction because the Federal Defendants allegedly took the opposite position before the  Hawaii State Medical Claims Conciliation Panel ("MCCP").  This argument is without merit.

    In the prior proceeding before the MCCP, the Federal Defendants argued that they were not subject to the MCCP's jurisdiction.  They claimed that the exclusive avenue for bringing suit against the Federal Defendants was pursuant to the FTCA in the United States District Court.  The Federal Defendants stated in a letter that "[i]f a state court malpractice suit were

to be brought against [the Federal Defendants], the Hawaii courts would lack jurisdiction because exclusive jurisdiction lies with the federal district court pursuant to the Federal Tort Claims Act (FTCA), following the claimants exhaustion of administrative remedies." (Letter by Meredith Torres, attached as Exhibit 8 to Plaintiffs' Opposition to the Federal Defendants' Motion to Dismiss (Doc. 61-10).) The Federal Defendants did not, however, agree that the court would have subject matter jurisdiction if the matter was brought before a United States District Court. The MCCP agreed with the Federal Defendants dismissed the Federal Defendants from the MCCP proceedings. At no point did the Federal Defendants concede subject matter jurisdiction. The Federal Defendants are not judicially estopped from challenging the Court's subject matter jurisdiction.

### (C) The Plaintiffs Have Not Presented Sufficient Evidence to Establish Subject Matter Jurisdiction Over the Federal Defendants

The Plaintiffs bear the burden of establishing subject matter jurisdiction over the Federal Defendants. See Colwell v. HHS, 558 F.3d 1112, 1121 (9th Cir. 2009) (citing St. Clair v. City of Chico, 880 F.2d 199, 201 (9th Cir. 1989)). To establish subject matter jurisdiction, the Plaintiffs must show that (i) Defendant Watkins was employed as a physician for the Federal Defendants and that (ii) his alleged negligence occurred as part of Defendant Watkins's duties. See 42 U.S.C. §§ 233(a),(g);

Dolan v. United States Postal Serv., 546 U.S. 481, 484 (2006);

Sheridan v. United States, 487 U.S. 392, 400 (1988).

> **(i) The Plaintiffs Have Established that Defendant Watkins Was a Contracting Physician at the Kohala Family Medical Center between August 10, 2006 and November 2, 2006**

The FSHCAA extends FTCA liability to those federally funded healthcare providers that serve traditionally underserved communities by deeming the organizations "employees" of the Public Health Service. 42 U.S.C. § 233(g). The FSHCAA also extends FTCA liability to "any contractor of such an entity who is a physician or other licensed or certified health care practitioner[.]" Id. A qualifying physician can include "a licensed or certified provider of services in the fields of family practice, general internal medicine, general pediatrics, or obstetrics and gynecology." 42 U.S.C. § 233(g)(5). A physician contracted to provide primary healthcare services at an organization that is deemed an employee of the Public Health Service, therefore, is subject to FTCA liability. Id.; see, e.g., El Rio Santa Cruz Neighborhood Health Ctr. v. United States HHS, 396 F.3d 1265, 1277 (D.C. Cir. 2005); Dedrick v. Youngblood, 200 F.3d 744, 746 (11th Cir. 2000).

Here, the Plaintiffs have put forward sufficient evidence to establish that Defendant Watkins was a contracted physician for the Kohala Family Health Center during a period in which the facility was deemed an employee of the Public Health Service.

According to the Declaration of Meredith Torres, an Attorney-Advisor of the DHHS, FTCA liability coverage extended to the Kohala Family Health Center on August 10, 2006. (Declaration of Meredith Torres at ¶2, attached to Federal Defendants' Motion to Dismiss (Doc. 32).) Between August 1, 2006 and November 2, 2006, Defendant Watkins was contracted to provide medical services at the Kohala Family Health Center.[2] There was, therefore, a period of approximately 3 months, between August 10, 2006 through November 2, 2006, when Defendant Watkins was a contracted physician providing medical services to patients at a covered healthcare facility.

The Federal Defendants, however, have argued that the

_____

[2]Although all the documents and testimony in the record clearly indicate that Defendant Watkins stopped treating patients at the Kohala Family Health Center after November 2, 2006, the Plaintiffs have attempted to argue that Defendant Watkins worked at the Kohala Family Health Center after November 2, 2006. The Plaintiffs have noted that during Defendant Watkins's deposition, he initially stated that he worked at the Kohala Family Health Center between August and November of 2007. Defendant Watkins then corrected his transcript upon review to state 2006. The Plaintiffs argue that this suggests that Defendant Watkins is lying about having completed his work at the Kohala Family Health Center in 2006 and that he was actually still working there until 2007. Putting aside the fact that elsewhere in his Deposition Defendant Watkins clearly stated his time at the Kohala Family Health Center ended in 2006 and that the contract which was submitted by both parties indicates that his contract expired in November 2006, Defendant Watkins has no incentive to lie. If Defendant Watkins was able to establish that he was employed by the Federal Defendants and thus covered by the FSHCAA and the FTCA, he would be fully immune from personal liability and be subrogated as a defendant by the United States. 28 U.S.C. § 2679(d); <u>Kashin v. Kent</u>, 457 F.3d 1033, 1036-37 (9th Cir. 2006).

Independent Contractor Agreement for Defendant Watkins was with the Syliva Sonneschein, Professional Corporation ("Sonnenschein Corp."), not Defendant Hamakua Health Center, Inc. or the United States of America. The Federal Defendants argue that FTCA liability can only impute to the Federal Defendants if Defendant Watkins was contracted directly with Hamakua Health Center, Inc.

The Federal Defendants' argument, however, is undermined by its own evidence. The Federal Defendants' own witness, Meredith Torres, stated that Defendant Hamakua Health Center, Inc. assumed the operation of Kohala Family Health Center on August 10, 2006, the same date FTCA liability coverage extended to the clinic. It follows, therefore, that Defendant Watkins was working as a physician at the Kohala Family Health Center during a period that Defendant Hamakua Health Center operated the clinic. During this period, Defendant Watkins saw patients, recorded his hours, charged for services, accepted an hourly wage, and represented the Kohala Family Health Center as one of its physicians. The DHHS's designation of the Kohala Family Health Center as an employee of the Public Health Service effective August 10, 2006, therefore, extended FTCA liability to any negligence that Defendant Watkins may have committed while working at the clinic between August 10, 2006 and November 2, 2006.

> **(ii) The Plaintiffs Have Failed to Put Forward Any Evidence that Defendant Watkins's Committed Any Relevant Medical Negligence between August 10, 2006 and November 2, 2006**

Having established an employment relationship between Defendant Watkins and the Federal Defendants, the Plaintiffs must then put forward evidence that Defendant Watkins's alleged negligence occurred during the scope of his obligations as a physician for the Kohala Family Medical Center. 42 U.S.C. §§ 233(a),(g); 42 C.F.R. 6.6(c); see Dolan, 546 U.S. at 484; Sheridan, 487 U.S. at 400.

Here, the Plaintiffs have failed to meet their burden. There is no evidence in the record that Defendant Watkins committed any medical negligence related to the Decedent between August 10, 2006 and November 2, 2006. At the core of the Plaintiffs' Complaint, is a claim that Defendant Watkins committed medical negligence by failing to diagnose and treat the Decedent's cancer when he removed the lesion from the Decedent's shoulder in July or August of 2007. The Plaintiffs have not put forward any evidence to indicate that Defendant Watkins treated or otherwise provided any medical care to the Decedent between August 10, 2006 and November 2, 2006. In fact, the Plaintiffs have put forward substantial evidence in the form of expert medical testimony that there were no cancer symptoms prior to the lesion's removal in 2007. It is not clear how Defendant Watkins could have committed medical negligence with regard to diagnosing and treating the Decedent's cancer in 2006 when, prior to 2007, there were purportedly no symptoms.

In addition, even if there was evidence that Defendant Watkins treated the Decedent during the few months he was working for the Kohala Family Medical Center, there is no evidence that it was done within scope of his limited employment relationship with the Federal Defendants. The Decedent was never a patient at the Kohala Family Medical Center and the facility never retained any custody of his medical records. Defendant Watkins's Independent Contractor Agreement did not prevent Defendant Watkins from operating an independent practice, and there is testimony that Defendant Watkins would see patients at his lodge periodically after he retired. If Defendant Watkins did provide some medical treatment to the Decedent between August 10, 2006 and November 2, 2006, it was done independently of his relationship with the Kohala Family Medical Center. There is simply no evidence that Defendant Watkins committed any medical negligence related to the Decedent between August 2, 2006 and November 2, 2006.

> **(iii)   Plaintiffs Have Failed to Establish Subject Matter Jurisdiction**

The Plaintiffs bear the burden of proving that Defendant Watkins was an employee of the Federal Defendants and that the alleged negligence occurred within the scope of that employment. See Colwell, 558 F.3d at 1121. The Plaintiffs have not met their burden. The evidence in the record indicates that Defendant Watkins was deemed an employee of the Federal Defendants between

August 10, 2006 and November 2, 2006.  There is no evidence,
however, that any of the alleged medical negligence of Defendant
Watkins occurred during the limited period where he was deemed an
employee of the Federal Defendants.  Absent some evidence that
Defendant Watkins was a federal employee acting within the scope
of his employment, there has been no waiver of sovereign immunity
by the Federal Defendants and the Court lacks subject matter
jurisdiction.  <u>See</u> 42 U.S.C. §§ 233(a),(g); <u>Orff</u>, 358 F.3d 1137.

DEFENDANTS UNITED STATES OF AMERICA AND HAMAKUA HEALTH
CETNER, INC. d/b/a KOHALA FAMILY HEALTH CENTER'S MOTION TO
DISMISS AMENDED COMPLAINT (Doc. 32), filed on April 9, 2012 is
**GRANTED.** All allegations against Defendants Hamakua Health Center
and the United States of America are **DISMISSED WITHOUT PREJUDICE.**
The only remaining defendant in the matter is Defendant Watkins.

## II.  PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AGAINST DEFENDANT WATKINS

Summary judgment is only appropriate when there are no
material issues of disputed fact and a party prevails as a matter
of law.  Fed. R. Civ. P. 56(a); <u>T.W. Elec. Serv., Inc. v. Pacific
Elec. Contractors Ass'n</u>, 809 F.2d 626, 630 (9th Cir. 1987).  The
Plaintiffs have moved for summary judgment against Defendant
Watkins on the issue of whether Defendant Watkins committed
medical negligence in his treatment of the Decedent.

To prove medical negligence, the Plaintiffs must establish that: "(1) Defendant(s) breached the applicable standard of care; and (2) The breach of the standard of care was a legal cause of injury/damage to plaintiff(s); and (3) Plaintiff(s) sustained injury/damage." Hawaii Standard Civil Jury Instruction 14.1; <u>see</u> <u>Bernard v. Char</u>, 903 P.2d 676, 682 (Haw. Ct. App. 1995).

Here, there are material issues of disputed fact precluding summary judgment against Defendant Watkins. The Plaintiffs have put forward the testimony of Dr. James J. Stark, a board certified physician in Hematology and Medical Oncology, and Dr. Alan S. Boyd, a board certified physician in Dermatology and Dermatopathology. Dr. Stark and Dr. Boyd reviewed the medical records in this case and the deposition testimony of Defendant Watkins and Dr. Anthony DeSalvo. Both doctors testified that Defendant Watkins should have tested the lesion removed from the Decedent in 2007 to see if it was cancerous. Dr. Stark and Dr. Boyd have both concluded that Defendant Watkins's treatment of the Decedent fell below the standard of care required of a primary care physician.

In his defense, Defendant Watkins has presented the testimony of Dr. Keith Flaherty, a board certified physician in internal medicine and oncology, and Dr. David N. Silvers, a board certified physician in Dermatology and Dermatopathology. Dr. Flaherty and Dr. Silvers reviewed all the medical records in the

case, the testimony of the Defendant and Dr. DeSalvo, and the reports of Dr. Stark and Dr. Boyd.  Dr. Flaherty concludes that Defendant Watkins did not breach the standard of care when he decided not to have the excised lesion tested.  Dr. Flaherty has stated that according to the evidence in the record, there was no indication that the excised lesion was a melanoma and that, if it had been, the proper course of action would have been to remove it immediately just as Defendant Watkins did.  Moreover, Dr. Flaherty and Dr. Silver have both stated that if the lesion was in fact a melanoma, then it was the not the source of the cancer that ultimately caused the Decedent's death.

The medical opinions of Dr. Stark and Dr. Boyd are in direct conflict with medical opinions of Dr. Flaherty and Dr. Silver. When there is directly conflicting medical testimony, as there is in this case, summary judgment is not appropriate.  Hutchinson v. United States, 838 F.2d 390, 392-93 (9th Cir. 1988); see Scharf v. United States Attorney Gen., 597 F.2d 1240, 1242-43 (9th Cir. 1979); see, e.g., Durham v. County of Maui, 08-00342 JMS/LEK, 2010 U.S. Dist. LEXIS 76156, at *45-46 (D. Haw. July 28, 2010). There are material issues of disputed fact about whether Defendant Watkins breached the standard of care and whether his alleged negligence caused the Decedent's death.  The Court will not weigh the credibility of conflicting expert witness testimony.  "Weighing the credibility of conflicting expert

witness testimony is the province of the jury" <u>Wyler Summit</u>
<u>Pshp. v. Turner Broadcasting Sys.</u>, 235 F.3d 1184, 1192 (9th Cir.
2000).

Material issues of disputed fact preclude summary judgment
against Defendant Watkins for medical negligence.  The
PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT (Doc. 44), filed
on May 31, 2012 is **DENIED.**


## III. DEFENDANT WATKINS'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE ISSUE OF PUNITIVE DAMAGES

Defendant Watkins has filed a Partial Motion for Summary
Judgment regarding the issue of punitive damages.  Defendant
Watkins argues that the Plaintiffs cannot establish, with clear
and convincing evidence, that Defendant Watkins acted with the
requisite malice or recklessness to warrant punitive damages.
Although Defendant Watkins's motion has not been fully briefed by
the parties, the Court finds that further briefing is
unnecessary.  There is sufficient evidence before the Court to
rule on Defendant Watkins's Motion.

State law governs whether punitive damages are warranted.
<u>See</u> <u>Miller v. Republic Nat'l Life Ins. Co.</u>, 789 F.2d 1336,
1338-39 (9th Cir. 1986).  A claim of punitive damages is not an
independent tort but is incidental to a cause of action.  <u>See</u>
<u>Kang v. Harrington</u>, 587 P.2d 285 (Haw. 1978).  Here, the
Plaintiff requests punitive damages pursuant to medical

negligence claim. In Hawaii, "[p]unitive or exemplary damages are generally defined as those damages assessed in addition to compensatory damages for the purpose of punishing the defendant for aggravated or outrageous misconduct and to deter the defendant and others from similar conduct in the future." Masaki v. Gen. Motors Corp., 780 P.2d 566, 570 (Haw. 1989).

The Supreme Court of Hawaii has held that to secure an award of punitive damages,

> "[t]he plaintiff must prove by clear and convincing evidence that the defendant has acted wantonly or oppressively or with such malice as implies a spirit of mischief or criminal indifference to civil obligations, or where there has been some wilful misconduct or that entire want of care which would raise the presumption of a conscious indifference to consequences."

Ass'n of Apt. Owners v. Venture 15, Inc., 167 P.3d 225, 290 (Haw. 2007)(quoting Masaki, 780 P.2d at 570). "Punitive damages are not awarded for mere inadvertence, mistake, or errors of judgment." Ass'n of Apt. Owners, 167 P.3d at 290. At the heart of determining whether to award punitive damages is an inquiry focused on the defendant's mental state and the nature of his conduct. Masaki, 780 P.2d at 570. In the context of a medical negligence case, a doctor will be subject to a punitive award if the trier of fact finds "either willful misconduct or entire want of care, to wit, gross negligence[.]" Ditto v. McCurdy, 947 P.2d 952, 960 (Haw. 1997).

Summary judgment is only appropriate on the issue of

punitive damages when there are no material issues of disputed fact and the defendant prevails as a matter of law. Fed. R. Civ. P. 56(a). Here, there are genuine issues of disputed fact concerning the motives and reasons for Defendant Watkins's conduct. Specifically, Plaintiff Bogart Parks testified that he had a conversation with Defendant Watkins on July 10, 2006, shortly after the Decedent was diagnosed with cancer. (See Plaintiff Bogart Mumford Parks' Response to Defendant Robert R. Watkins, M.D.'s First Request for Answers to Interrogatories at 2, attached as Exhibit 4 to Plaintiffs' Motion for Partial Summary Judgment (Doc. 45).) Plaintiff Bogart Parks stated that Defendant Watkins confessed that he believed the lesion removed from the Decedent in 2007 was cancerous, and that Defendant Watkins did not test the lesion for cancer because he wanted to save money. (Id. at 2-3.) This testimony, on its own, creates a material issue of disputed fact about whether Defendant Watkins deliberately breached a standard of care for personal pecuniary gain. A trier of fact could take this evidence and conclude that Defendant Watkins committed gross negligence as the Decedent's primary healthcare physician. Summary judgment on the issue of punitive damages, therefore, is not appropriate at this time.

DEFENDANT ROBERT R. WATKINS, M.D.'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON PLAINTIFFS' CLAIM FOR PUNITIVE DAMAGES (Doc. 72), filed on August 6, 2012, is **DENIED**.

**CONCLUSION**

(1)  The evidence in the record indicates that the Court

     lacks subject matter jurisdiction over Defendants

     Hamakua Health Center and the United States of America.

    (A)  DEFENDANTS UNITED STATES OF AMERICA AND HAMAKUA

        HEALTH CETNER, INC. d/b/a KOHALA FAMILY HEALTH

        CENTER'S MOTION TO DISMISS AMENDED COMPLAINT (Doc.

        32), filed on April 9, 2012 is **GRANTED**.

    (B)  All allegations against Defendants Hamakua Health

        Center and the United States of America are

        **DISMISSED WITHOUT PREJUDICE.**

    (C)  The only remaining defendant in the matter is

        Defendant Watkins.

(2)  There are material issues of disputed fact that

     preclude summary judgment against Defendant Watkins on

     the issue of medical negligence.  PLAINTIFFS' MOTION

     FOR PARTIAL SUMMARY JUDGMENT (Doc. 44), filed on May

     31, 2012 is **DENIED**.

(3)  There are material issues of disputed fact concerning

     whether Defendant Watkins's alleged medical negligence

     warrant punitive damages.  DEFENDANT ROBERT R. WATKINS,

     M.D.'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON

PLAINTIFFS' CLAIM FOR PUNITIVE DAMAGES (Doc. 72), filed on August 6, 2012, is **DENIED.**

IT IS SO ORDERED.

DATED: August 31, 2012, Honolulu, Hawaii.



/S/ Helen Gillmor
_____
Helen Gillmor
United States District Judge

Parks, et al v. Watkins, et al, CV 11-00594, **ORDER GRANTING DEFENDANTS UNITED STATES OF AMERICA AND HAMAKUA HEALTH CENTER, INC., D/B/A KOHALA FAMILY HEALTH CENTER'S MOTION TO DISMISS AMENDED COMPLAINT (DOC. 32) AND DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT (DOC. 44) AND DENYING DEFENDANT ROBERT R. WATKINS, M.D.'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON PLAINTIFFS' CLAIM FOR PUNITIVE DAMAGES (DOC. 72).**